UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AMERICAN ECONOMY INSURANCE )
COMPANY, )
 )
    Plaintiff, )
 )
  vs. ) Case No. 4:04CV47 JCH
 )
EMI ENTERPRISES, INC., )
MORRIS ESFORMES, )
VALERIE JACKSON, et al., )
 )
    Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' Motions for Summary Judgment, filed March 22, 2006. During a heat wave in April 2001, four residents of a St. Louis nursing home died. Wrongful death suits were filed in Missouri state court, and all have been settled or tried. The instant case concerns availability of insurance coverage to pay the judgment in the wrongful death suit of Freddie Mae Burns, one of the four decedents and mother of Defendant Valerie Jackson. Plaintiff American Economy Insurance Company seeks a declaratory judgment regarding its duty to provide coverage for Ms. Burns' death. For the reasons discussed below, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendants' Motions.

## BACKGROUND

In April, 2001, a heat wave swept across the St. Louis area. The air conditioning system at

Leland Healthcare Nursing Home either was not working or was not turned on, and four residents, including Freddie Mae Burns, died. A jury awarded her daughter, Valerie Jackson, $275,000 in her wrongful death suit against EMI[1] and Leland Healthcare. (Judgment, Doc. No. 160, attached exh. BB).

Leland Healthcare is owned in part by Defendant Esformes. Esformes is also the sole officer and shareholder of Defendant EMI Enterprises. Plaintiff American Economy Insurance Company ("AEIC") issued a commercial general liability ("CGL") insurance policy to EMI. EMI requested coverage for the suits that resulted from the deaths. AEIC denied the claims on several grounds.

Intervenor Defendant North American Capacity Insurance Company ("NACIC") had issued a policy to Leland Healthcare. NACIC settled with the families of two of the four decedents. NACIC and AEIC settled with the third decedent's family. Inadequate funds remain under the NACIC policy to pay the judgment in favor of Valerie Jackson.

Plaintiff AEIC brought the instant Complaint for a Declaratory Judgment in this Court on January 13, 2004. The Second Amended Complaint was filed on July 27, 2005. (Doc. No. 72). Count II[2] seeks a declaratory judgment that AEIC has no duty to defend or indemnify for Jackson's wrongful death suit. Plaintiff AEIC, Defendant Jackson, and Defendants EMI and Esformes each filed a Motion for Summary Judgment on March 22, 2006. (Doc. Nos. 131, 136, 139). The matters are now briefed and ready for disposition.

---

[1] On a directed verdict, the trial judge in the state court suit dismissed Morris Esformes as a defendant. (EMI's Reply, Doc. No. 160, at 1).

[2] The other two counts in the complaint have been settled.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

**DISCUSSION**

I.   **AEIC's Motion for Summary Judgment**

AEIC raises three main arguments in support of its summary judgment motion.[3] It first asserts that EMI neither owns nor operates Leland Healthcare Nursing Home, so the policy that AEIC issued to EMI provides no coverage for occurrences at Leland. Second, and in the alternative, AEIC argues that EMI breached the notice requirements of the policy, so AEIC has no duty to provide coverage.[4] Third, AEIC contends that the coverage falls under the "professional services" exclusion of the policy. The Court finds issues of fact as to the first two issues, but grants judgment in favor of AEIC based on its third argument.

Before the Court can address the three issues, there is a threshold question of conflict of laws.

A.   **Conflict of Laws**

AEIC urges the Court to apply Illinois law, and Defendants contend that Missouri law applies. A federal court sitting in diversity is required to apply the conflict of laws principles of the forum state. <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487 (1941). This Court thus must follow Missouri law, which resolves conflicts of law issues under principles set forth in the Restatement (Second) of Conflict of Laws (1971). In general, in cases involving a contract, the Missouri Supreme

---

[3] Although each party filed a separate motion for summary judgment, each motion addresses substantially the same issues. The Court will address AEIC's motion, and refer to issues raised in the other two motions for summary judgment where appropriate.

[4] NACIC has defended Leland in all four lawsuits arising out of the deaths at Leland. NACIC also indemnified Leland to the extent of the policy limit. Although NACIC paid a portion of the judgment in the <u>Jackson</u> case, to its policy limit, a substantial portion of the judgment remains unsatisfied. This amount is at issue in this case. NACIC is not requesting that AEIC share in the costs of defense. (NACIC Response, Doc. No. 154, at 3).

Court has stated that "Missouri choice of law rules follow the 'most significant relationship' test of the Restatement (Second) of Conflicts of Laws, Section 188." Superior Equipment Co., Inc. v. Maryland Cas. Co., 986 S.W.2d 477, 480 (Mo. Ct. App. 1998). This test requires the balancing of a number of factors, including "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Id. But, as here, when the contract is one for surety or casualty insurance, the most important factor is the "local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy." Restatement (Second) of Conflicts of Laws § 193; Hartzler v. Am. Family Mut. Ins. Co., 881 S.W.2d 653, 655 (Mo. Ct. App.1994).

The factors enumerated in § 188 favor the application of Illinois law. The policy was negotiated and contracted for in Illinois. The location of the subject matter of the contract was EMI's office, also Illinois. EMI is an Illinois resident that does business in Illinois, Missouri, and a number of other states. AEIC is a resident of Indiana, and does business in Illinois and a number of other states. The place of performance is Illinois, and may include any other state where EMI does business.

Moreover, consideration of § 193 favors the application of Illinois law. The key phrase in § 193 is "which the parties understood." Significant evidence in the record demonstrates that the parties understood EMI's office in Lincolnwood, Illinois to be the principle location of the risk. Ronald Abrams, the agent who sold the policy, testified that the policy was meant to cover the contents of EMI's office in case of fire or theft, or in case of bodily injury in the office. (Abrams Deposition, Doc. No. 131, attached exh. E, at 150). Esformes testified that he relied on Mr. Abrams'

5

advice in choosing a policy. (Esformes Deposition, Doc. No. 131, attached exh. A, at 216-17). Leland Healthcare had a separate policy purchased from NACIC that explicitly covered events at Leland. AEIC had never written a policy for a nursing home (Able Deposition, Doc. No. 131, attached exh. H, at 85) and nursing homes are not eligible for the type of policy issued to EMI. (Id. at 84). Even more important, the $325 annual premium for the policy demonstrates that it was intended for EMI's office and not for nursing homes. (See Policy, Doc. No. 1, attached exh. A, at 6). This premium is significantly less than the NACIC policy's annual premium, in excess of $900,000, which covered a number of nursing homes, including Leland. (Abrams Deposition, Doc. No. 1, attached exh. F, at 43). Finally, the premises listed on the policy is EMI's Lincolnwood, Illinois office, and is described as being used for "office-accounting/bookkeeping." (Policy, Doc. No. 1, attached exh. A, at 6).

Because the parties understood the principle location of the insured risk to be the EMI office in Illinois, the Court finds that Illinois law applies to the inquiry.

**B.     Owned or Operated**

AEIC asserts that because EMI neither owns nor operates Leland Healthcare, AEIC has no duty to indemnify EMI for the underlying lawsuit.

The relevant provision of the policy reads:

C.     WHO IS AN INSURED?

    1.     If you are designated in the Declarations as:
...
        d.     An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but

only with respect to their liability as stockholders.

(Policy, Doc. No. 1, attached exh. A, at 8).

EMI is the only named insured on the policy. (Id.). Defendant Esformes is the sole shareholder and officer of EMI, and therefore is an insured with respect to his duties as an officer of EMI. Leland is a separate corporate entity from EMI and not named in the policy. Defendants argue that Esformes was acting as a representative of EMI when he performed management duties at Leland, so AEIC must provide coverage for the occurrences at Leland. If, however, Esformes were acting as an officer or representative of Leland, then AEIC would have no duty to provide coverage. The determination of whether Esformes was acting as a representative of EMI is a question of fact.

Esformes testified that he incorporated EMI to get tax and pension benefits for himself. (Esformes Deposition, Doc. No. 131, attached exh. A, at 133). But EMI also performed management duties for at least some of the nursing homes. (Id. at 137). Esformes also testified that he did not remember if EMI had a management agreement with Leland (Id. at 136) but that EMI did not receive any compensation for any service that it "allegedly performed for Leland." (Id. at 138). EMI did have management agreements with some of the other nursing homes, but having no agreement would not preclude EMI from performing management duties at Leland. (Id. at 134-35; Esformes Deposition, Doc. No. 131, attached exh. C, at 330).

In answers to interrogatories, EMI stated that it was "not aware of any information concerning EMI's role in patient care at Leland, the physical operation of Leland, or Leland's air conditioning system" and that it had no information regarding whether Esformes, or any other employee of EMI "was acting in his capacity as President and/or an employee of EMI when engaging in management or other duties/services relative to the Leland nursing home...." (Interrogatory, Doc. No. 131, attached exh. Y, at 7-8).

Esformes was actively involved in providing management services to Leland, including decisions involving the air-conditioning system. (Esformes Deposition, Doc. No. 136, attached exh. 1, at 229). When asked whether he was making these decisions as a member of EMI or of Leland, he answered "how I distinguish EMI from Morris Esformes and Morris Esformes from EMI is very difficult to do." (Esformes Deposition, Doc. No. 131, attached exh. A, at 133). EMI wrote at least one check to a vendor for air-conditioning repair services at Leland. (Check, Doc. No. 136, attached exh. 10).

The Court finds that there is a factual issue as to whether Esformes was acting as a representative of EMI when he participated in the management of Leland.

**C.    Notice to Insurer**

AEIC argues that, even if the policy did provide coverage for Leland Healthcare, it would not be required to indemnify for this occurrence because EMI breached the terms of the policy.

Specifically, AEIC contends that it is not required to provide coverage for the underlying lawsuit because EMI violated two notice provisions of the insurance policy. An insured is required to notify the insurer of an occurrence, and must also transmit suit papers to the insurer. AEIC asserts that EMI failed to do both in a timely fashion. The Court finds there to be issues of fact on both of these requirements.

The relevant provision reads:

LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS

>    2.    Duties in the Event of Occurrence, Offense, Claim or Suit
>
>        a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the

>        extent possible, notice should include:
>        (1)    How, when and where the "occurrence" or offense took
>               place;
>        (2)    The names and addresses of any injured persons and
>               witnesses; and
>        (3)    The nature and location of any injury or damage arising out
>               of the "occurrence" or offense.
>
> b.     If a claim is made or a "suit" is brought against any insured you
>        must:
>        (1)    Immediately record the specifics of the claim or "suit" and
>               the date received; and
>        (2)    Notify us as soon as practicable.
>        You must see to it that we receive written notice of the claim or
>        "suit" as soon as practicable.
>
> c.     You and any other involved insured must:
>        (1)    Immediately send us copies of any demands, notices,
>               summonses, or legal papers received in connection with the
>               claim or "suit;"
>        (2)    Authorize us to obtain records and other information;
>        (3)    Cooperate with us in the investigation or settlement of the
>               claim or defense against the "suit;" and
>        (4)    Assist us, upon our request, in the enforcement of any right
>               against any person or organization which may be liable to
>               the insured because of injury or damage to which this
>               insurance may also apply...

(Policy, Doc. No. 1, attached exh. A, at 42).

In Illinois, a "notice provision is a valid condition precedent and not a mere technical requirement that the insured is free to overlook or ignore with impunity." Montgomery Ward & Co., Inc. v. Home Ins. Co., 753 N.E.2d 999, 1004 (Ill. Ct. App. 2001). "A notice of suit requirement in a policy serves the purpose of enabling the insurer to conduct a timely and thorough investigation of the insured's claim, as well as to locate and participate in the defense of the insured." Country Mut. Ins. Co. v. Livorsi Marine, Inc., 833 N.E.2d 871, 874 (Ill. Ct. App. 2004) (internal quotations omitted). Notice of occurrence serves much the same purposes. Country Mut., 833 N.E.2d at 874. Thus, if the insurer does not receive timely notice of the occurrence or claim, it may lose the

9

opportunity to participate in the defense and to protect its interest. Id. Actual notice may be adequate for both notice of occurrence and transmittal of suit papers, as long as it is "sufficient for the insurer to locate and defend the suit." Rice v. AAA Aerostar, Inc., 690 N.E.2d 1067, 1071 (Ill. Ct. App. 1998). The insurer need not prove that it was prejudiced by any lack of notice, but prejudice may be a factor in determining the reasonableness of the notice. Country Mutual Ins. Co. v. Livorsi Marine, Inc., --- N.E.2d ----, 2006 WL 1348722 (Ill. May 18, 2006).

The policy requires EMI to transmit suit papers immediately. The lawsuits over the deaths at Leland were filed between May 16, 2001 and January 28, 2002.[5] (EMI's Statement of Undisputed Material Facts, Doc. No. 141 ¶ 15; Doc. No. 131, attached exhs. EE, GG). EMI did not transmit any suit papers, however, until July 10, 2003. (EMI's Statement of Undisputed Material Facts, Doc. No. 141 ¶ 28).

EMI stated that it first gave notice to AEIC of the "claim" by transmitting suit papers on July 24, 2003. (EMI's Answers to Interrogatories, Doc. No. 131, attached exh. Y at 9). Now, however, Defendants assert that AEIC had actual notice of the lawsuit. In support of this, Defendants point to Esformes' testimony:

> Q: And would you agree that you personally have never had any conversations with anybody from [AEIC] and/or its agents regarding this lawsuit?
> ...
> A: ... I did speak to Mr. Abrams [AEIC's agent] about this a while after the whole thing took place because he brought to my attention that I had an EMI policy which I completely forgot about.

(Esformes Deposition, Doc. No. 131, attached exh. A, at 157). It is unclear when Abrams and Esformes had the conversation to which Esformes refers. Abrams, on the other hand, testified that

---

[5] Valerie Jackson filed her original petition on May 16, 2001, but then dismissed without prejudice on July 18, 2001. She then refiled on January 28, 2002. (EMI's Statement of Undisputed Material Facts, Doc. No. 141 ¶¶ 13-15). The other suits were filed between those two dates.

he "recall[s] never speaking with [Esformes] about the claim." (Abrams Deposition, Doc. No. 131, attached exh. E, at 182-83). If Esformes told Abrams about the lawsuits within a reasonable time after they were filed, that communication could constitute timely actual notice of the occurrences and the suits,[6] fulfilling EMI's duty under the policy.

There is an issue of material fact as to the timeliness of EMI's notice to AEIC.

**D.    Professional Services Exclusion**

Assuming that EMI provided proper notice to AEIC and that EMI was involved in the management of Leland, AEIC still contends that it has no duty to indemnify because the underlying lawsuit alleges injuries that fall within the professional services exclusion of the policy. The relevant provision reads:

> B.    EXCLUSIONS
> 1.    Applicable to Business Liability Coverage--
>       This insurance does not apply to:
>       j.    Professional Services
>             "Bodily injury", "property damage", "personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:
>             ...
>             (4)    Medical, surgical, dental, x-ray or nursing services, treatment, advice, or instruction;
>             (5)    Any health or therapeutic service treatment, advice, or instruction;

(Policy, Doc. No. 1, attached exh. A, at 37).

Defendant EMI responds that the <u>Jackson</u> lawsuit does not allege that EMI or Esformes failed to provide professional services, but that EMI failed to:

- ensure that an emergency and/or disaster plan was in place at Leland Health Care Center at any time prior to Freddie Mae Burns' death;

---

[6] Whether it could serve as notice of both the occurrence and the suits would depend on the timing and substance of the conversation.

11

- adequately train the Director of Nursing and the Administrator after hiring as to the handling of high heat conditions at Leland Health Care Center;
- explain to [the Administrator] the procedures involved in turning on the air conditioning system at Leland Health Care Center prior to Freddie Mae Burns' death.

(Instruction 8, Doc. No. 160, attached exh. DD). EMI contends that none of these allegations constitute professional services.

There can be little argument that the nursing services provided at Leland come under the ambit of professional services. Esformes agreed that Leland's objective was "to provide professional care and treatment for the elderly and those who otherwise cannot live independently." (Esformes Deposition, Doc. No. 131, attached exh. A at 52-53). Professional medical judgment went into the decision of when to turn on the facility's air conditioning system. (Esformes Deposition, Doc. No. 131, attached exh. A at 95-96; Johnson Deposition, Doc. No. 131, attached exh. G, at 287-88). The question is whether EMI's and Esformes' actions, in managing Leland, falls within the professional services exclusion.

The Court finds the case of Northbrook Prop. & Cas. Co. v. Transportation Joint Agreement, 741 N.E.2d 253 (Ill. 2000) instructive. In Transportation Joint Agreement, a school bus accident resulted in the deaths of several students and injury to numerous others. The school districts had an insurance policy that excluded from coverage bodily injuries arising out of the use of a motor vehicle. The insurance company sought a declaratory judgment that it had no duty to defend because the injuries fell into the exclusion. The Illinois Supreme Court held that:

> The allegations of the underlying complaints utterly fail to state facts which either actually or potentially bring the cases within the policy's coverage. The policy excludes injuries arising from the school districts' use or operation of a motor vehicle. Allegations that the school districts inadequately planned and inspected bus routes or failed to warn bus drivers of potential hazards along the routes are nothing more than rephrasings of the fact that the students' injuries arose from the school districts' use or operation of a motor vehicle. Contrary to the appellate court's holding, the

students' complaints failed to allege that the injuries arose from events "wholly independent of any negligent operation of the bus." 309 Ill.App.3d at 266, 242 Ill.Dec. 791, 722 N.E.2d 280. Northbrook therefore has no duty to defend the school districts in the underlying lawsuits.

Transportation Joint Agreement, 741 N.E.2d at 254.[7] Although Transportation Joint Agreement concerned the duty to defend, while the instant case concerns the duty to indemnify, the Court finds it applicable. C.f. Outboard Marine Corp. v. Liberty Mut. Ins. Co., 607 N.E.2d 1204, 1220 (Ill. 1992) ("insurer's duty to defend its insured is much broader than its duty to indemnify.").

As in Transportation Joint Agreement, the allegations against EMI in Jackson are no more than rephrasing the allegation that Burns' death arose from rendering, or failure to render, skilled nursing care. The first allegation, that EMI failed to establish an emergency disaster plan, is similar to the claim in Transportation Joint Agreement that the school district failed to inspect routes. The

---

[7] The allegations in Transportation Joint Agreement included:
(1) that Defendants failed to adequately provide proper and sufficient training to its bus drivers, including Patricia Catencamp;
(2) that Defendants failed to adequately inform and educate its bus drivers, including Patricia Catencamp, of the bus routes and the hazards present on such routes;
(3) that Defendants failed [to] provide adequate route sheets to bus drivers;
(4) that Defendants failed to inspect routes and notify drivers of hazardous conditions;
(5) that Catencamp was not prepared or trained by the Schools to operate the school bus safely and prudently on the day of the accident;
(6) that Defendants failed to provide Patricia Catencamp with the proper training, experience, and qualifications;
(7) that Defendants failed to comply with federal, state and school district laws and regulations governing the conduct, training and procedures regarding the operation of school buses;
(8) that Defendants failed to instruct Patricia Catencamp regarding the route to which she was assigned on October 25, 1995;
(9) that Defendants failed to supervise properly the bus drivers and their supervisors;
(10) that Defendants failed to warn the plaintiff's decedent and the general public that Patricia Catencamp was unfamiliar with the route, inexperienced and unqualified;
(11) that Defendants failed to act as would a reasonable and prudent person under the same circumstances.
Northbrook Prop. and Cas. Ins. Co. v. Transportation Joint Agreement, et al., 722 N.E.2d 280, 283-283 (Ill. Ct. App.1999).

13

second two allegations which assert a failure properly to train the director of nursing and the administrator to perform duties that involved professional medical judgment, is similar to the allegation in Transportation Joint Agreement that defendants failed properly to train the bus driver. Each of the duties that EMI allegedly failed to perform properly are those of a manager of a nursing facility. The allegations are not wholly independent of the negligent provision of professional services. The Jackson petition is for the negligent provision of nursing or other professional services, and thus falls within the professional services exclusion of the AEIC policy.

Plaintiff's Motion for Summary Judgment is granted.

## II. **EMI and Morris Esformes' Motion for Summary Judgment**

In support of their Motion for Summary Judgment, Defendants EMI and Esformes propound three arguments. First they assert that EMI and Esformes are insureds under the AEIC policy because EMI is a named insured and Esformes is an officer and shareholder of EMI. Second they contend that they complied with the policy's notice requirement. Third they argue that the claims[8] do not fall within any exclusion to the policy.

For the reasons discussed above, Defendants EMI and Esformes' Motion for Summary Judgment (Doc. No. 139) is denied.

---

[8] EMI and Esformes assert that AEIC has a duty to defend them in the Jackson suit. As discussed above, the duty to defend is not at issue here, it is the duty to indemnify that they seek to enforce.

14

### III. Valerie Jackson's Motion for Summary Judgment

Defendant Valerie Jackson moves for summary judgment on three bases. First, that the allegations are not excluded by the professional services exclusion to the policy. Second, that AEIC received proper notice of both the occurrences and the lawsuits. And third, that the occurrences at Leland were covered by the AEIC policy because EMI and Esformes were involved in the management of Leland.

Again, for the reasons discussed above, Defendant Valerie Jackson's Motion for Summary Judgment (Doc. No. 136) is denied.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff AEIC's Motion for Summary Judgment (Doc. No. 131) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Valerie Jackson's Motion for Summary Judgment (Doc. No. 136) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendants EMI and Morris Esformes' Motion for Summary Judgment (Doc. No. 139) is hereby **DENIED**.

Dated this 30th day of May, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE